IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**BARBARA ELAM AND BOBBY ELAM**                      **PLAINTIFFS**

**VS.**                                      **CIVIL ACTION NO. 1:08cv304-GHD-JAD**

**THE KANSAS CITY SOUTHERN RAILWAY**
**COMPANY AND RONALD L. MICHAEL**                      **DEFENDANTS**

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW, Defendants The Kansas City Southern Railway Company and Ronald L. Michael (collectively "KCSR" or "Railroad Defendants"), by and through undersigned counsel, and file this, their Motion for Summary Judgement. In support thereof, KCSR would show unto the Court the following:

### I. Introduction

1. On November 18, 2006, Barbara Elam ("Elam") drove her car into the side of a stopped KCSR train that was completely occupying the Pinecrest Street crossing ("Crossing") in Corinth, Mississippi. Elam and her husband (collectively "Plaintiffs") now seek damages from the Railroad Defendants for injuries Elam allegedly sustained as a result of the collision. However, Plaintiffs' claims are preempted by the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq.,* and are therefore barred. Further, Plaintiffs' claims must fail under the Mississippi state law occupied crossing doctrine. As such, KCSR's Motion for Summary Judgement should be granted, and Plaintiffs' claims based upon alleged inadequate warning of the Train and/or Crossing should be dismissed with prejudice.

## II. Factual Background and Procedural History

2.     On November 16, 2006, Elam was driving her car in and around Corinth, Mississippi. *See* Complaint, a true and correct copy of which is attached hereto as Exhibit A. At approximately 5:20 pm on that day, Elam's vehicle approached the Crossing. *Id.* At the same time, a KCSR train ("Train") was conducting switching operations and was fully occupying the Crossing. *See* Exhibit A. At the time of the accident ("Accident"), Ronald L. Michael ("Michael") was the locomotive engineer of the Train. *Id.* The Crossing was then equipped with federally-funded pavement marking, reflectorized crossbucks and advanced warning signs. *See* Affidavit of Robert Burt and attachments, attached hereto as Exhibit B and Affidavit of Charles Lars and attachments, attached hereto as Exhibit C. Elam's vehicle failed to yield to the Train and collided with the side of the Train. *See* Exhibit A.

3.     Elam sustained personal injuries as the result of the Accident. On November 20, 2008, Plaintiffs filed suit against KCSR and Michael in the Circuit Court of Alcorn County, Mississippi. Plaintiffs asserted various claims of negligence against KCSR, including a claim of negligence *per se* based upon an alleged violation of Mississippi's anti-blocking statute, Miss. Code Ann. § 77-9-235, and state law claims of negligence asserting that KCSR failed to provide adequate warning of the Crossing and Train by failing to flagmen, fusees, bells, whistles or other reasonable warning signals, asserting that KCSR negligently operated its Train, and asserting that KCSR failed to maintain the Crossing in a safe condition by failing to install warning devices such as bells, lights and flashing signals. As recognized by the Fifth Circuit, Plaintiffs essentially asserted the KCSR was negligent by blocking the crossing and by providing inadequate warning signals to warn motorists, such as Barbara Elam, of the Train's presence on the Crossing. *See*

*Elam v. Kansas City Southern Ry. Co.*, 2011 WL 873561, *1 (5th Cir.2011).

4. On or around December 23, 2008, KCSR timely removed this case to this Court, pursuant to 28 U.S.C. § 1446(b), based upon the existence of both federal question and diversity jurisdiction. Plaintiffs thereafter moved to remand; KCSR opposed Plaintiffs' motion. After extensive briefing by both parties, this Court ultimately dismissed Plaintiffs' state law negligence claims and Plaintiffs' negligence *per se* claim (*i.e.*, anti-blocking statute claim) for refiling with the STB based upon the complete preemption of Plaintiffs' claims under the Interstate Commerce Commission Termination Act, 49 U.S.C. 10501(b). Plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit.

5. On or around March 15, 2011, the Fifth Circuit ruled that Plaintiffs' anti-blocking negligence *per se* claim under Mississippi's anti-blocking statue was preempted by the ICCTA and upheld this Court's dismissal of that claims. *See Elam* at *10-11. The Fifth Circuit also found that any of the Plaintiffs' negligence claims were also preempted to the extent that they were based on KCSR blocking the Crossing. *Id.* at FN13. The Fifth Circuit further held that there was not enough evidence in the record before the court at that time for the court to find ICCTA preemption as to Plaintiffs' other state law negligence claims that were based upon inadequate warning of the Train and/or Crossing. *Id.* at 12-13. Therefore, the Fifth Circuit remanded Plaintiffs' other state law claims based upon inadequate warning of the Train and/or Crossing to this Court for further proceedings. *Id.* at 13. These latter claims are the only claims before this Court at the present time. *Id.*

6. KCSR believes that further development of the record would show that Plaintiffs' negligent warning claims are in fact preempted by the ICCTA, and KCSR reserves the right to

3

assert such preemption at a later date, should this motion not be granted. However, at this point, the undisputed facts as currently developed show that Plaintiffs' claims against KCSR based upon alleged improper warning of the Train and/or Crossing are preempted by the Federal Railway Safety Act, 49 U.S.C. § 20101, *et seq* ("FRSA") and federal regulations promulgated pursuant thereto. Further, Plaintiffs' inadequate warning claims are barred by Mississippi's occupied crossing doctrine. Thus, Plaintiffs' claims must fail as a matter of law. For these reasons, KCSR respectfully requests that its Motion for Summary Judgement be granted, and that Plaintiffs' claims based upon the alleged inadequate warning of the Train and/or Crossing be dismissed with prejudice.

### III. LEGAL ANALYSIS

#### A. KCSR's warning signals were adequate as a matter of law.

7.  Plaintiffs argue that they are entitled to damages from KCSR because KCSR allegedly failed to properly warn of the Train and/or Crossing.[1] However, Plaintiffs' claims that KCSR should have provided active warning signals, such as flashing lights, flares, fusees, and flagmen, to warn motorists of the approaching train, challenge the adequacy of the warning signals at the subject Crossing, and are preempted by the FRSA.[2]

---

[1] Specifically, Plaintiffs claim that KCSR and Michael should have provided additional warning to motorists that the Train was present at the Crossing by positioning flagmen, guards or other persons to warn of the presence of the Train and by installing additional warning signals at the Crossing such as lights, bells, flashing signals or other reasonable warning devices.

[2] The FRSA provides, in pertinent part:
>   (1) Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable.
>   (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when

4

8.  In 1981, the Crossing was upgraded pursuant to the FRSA as part of a state-wide crossing protection project (Mississippi Department of Transportation Project No. 75-0916-00-026-10) administered by the Mississippi Highway Commission. *See* Affidavit of Robert A. Burt, attached hereto as Exhibit B. The warning signals at the subject Crossing at the time of the Accident were installed pursuant to this project using federal funding. *Id.* When, as in this case, warning devices selected by the federal government pursuant to a crossing upgrade project were installed using federal funds, any claim such as Plaintiffs' that warning devices were inadequate, or that other, additional warning devices were needed, is preempted by the FRSA because the federal government, by approving and financing part or all of the warning devices installed, has determined as a matter of law what warning is necessary for a particular crossing. *See Norfolk Southern Ry. Co. v. Shanklin*, 120 S.Ct. 1467, 1471 (2000) (holding that, where the evidence shows federal funds were expended for the installation of warning signs or devices at a railroad crossing, state law claims based on the adequacy of those warning devices are preempted by the FRSA); *Richardson v. Norfolk Southern Ry. Co.*, 923 So.2d 1002, 1008-09 (Miss.2006) (citing *Shanklin* and holding that state tort claims based upon allegedly inadequate warning signals are preempted pursuant the FRSA when federal funds were used in the installation of the warning devices). *See also Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206 (10th Cir.2008); *Hesling v. CSX Transp., Inc.*, 396 F. 3d 632, 644-45 (5th Cir. (Miss. 2005) (holding same)); *Hester v. CSX*

---

the law, regulation, or order -
    (A)    is necessary to eliminate or reduce an essentially local safety hazard;
    (B)    is not incompatible with a law, regulation, or order of the United States Government; and
    (C)    does not unreasonably burden interstate commerce.
49 U.S.C. § 20106.

*Transp., Inc.*, 61 F. 3d 382, 387 (5th Cir. 1995) (holding same); *Wilson v. Kansas City Southern Ry. Co.*, 276 F. Supp. 2d 614, 620 (S.D. Miss. 2003) (Lee, J.) (holding same); *Skinner v. Kansas City Southern Ry. Co.*, 1996 WL 33370641 (N.D. Miss. Jan. 29, 1996). Thus, the advance warning signals present at the Crossing were adequate as a matter of law and any claims to the contrary are barred.[3]

    9.    Likewise, federal law governs Plaintiffs' claims related to sounding of the locomotive's horn/whistle. While there is no requirement under Mississippi law for a train to blow its horn/whistle after a crossing is occupied,[4] as was the situation herein, federal law also makes it clear that KCSR had no duty to blow the locomotive horn once the Crossing was occupied. Pursuant to 49 C.F.R. § 221.21(a),[5] entitled "When must a locomotive horn be used?,"

---

[3] This result extends to all of the Plaintiffs' claims asserting additional warning was necessary, including Plaintiffs' claim that there should have been a flagman at the Crossing with a fusee, since this is just another way of saying that the warning signs present at the Crossing were inadequate. Beyond this, however, federal regulations promulgated pursuant to the FRSA also provide that, once a train has fully occupied a crossing, the railroad has no duty to warn motorists of the train's presence. *See, e.g.,* 49 C.F.R. 234.105(c)(3) (requiring railroads to flag a crossing only until the crossing is fully occupied under circumstances in which active warning signals (flashing lights or gates) are not functioning correctly). State laws requiring railroads to provide additional warnings under these circumstances are, in fact, preempted by the FRSA. *See* 49 C.F.R. 234.4 (providing that, pursuant to 49 U.S.C. 20106, "issuance of these regulations preempts any state law ... covering the same subject matter").

[4] See discussion of Mississippi law on this point in Section B, below.

[5] Section 221.21(a) reads in relevant part as follows:
(a) Except as provided in this part, the locomotive horn on the lead locomotive of a train, lite locomotive consist, individual locomotive or lead cab car shall be sounded when such locomotive or lead cab car is approaching a public highway-rail grade crossing. Sounding of the locomotive horn with two long blasts, one short blast and one long blast shall be initiated at a location so as to be in accordance with paragraph (b) of this section and shall be repeated or prolonged until the locomotive occupies the crossing. This pattern may be varied as necessary where crossings are spaced closely together.
(b)(1) Railroads to which this part applies shall comply with all the requirements contained in this paragraph (b) beginning on December 15, 2006. On and after June 24, 2005, but prior to December 15, 2006, a railroad shall, at its option, comply with this section or shall sound the locomotive horn in the manner required by State law, or in the absence of State law, in the manner required by railroad operating rules in effect immediately prior to June 24, 2005.

6

KCSR was required only to sound the horn as the locomotive was "approaching [the] public highway-crossing," and this duty ceased once "the locomotive occupied the crossing."

10. At the time of the Accident, 49 C.F.R. § 221.21(a) provided that KCSR could fulfill its duty under federal law with regard to sounding the locomotive horn either by complying with section 221.21(a) or by complying with state law. KCSR complied with section 222.21(a). Part 222 of Title 49 also includes an express preemption provision (which was in effect at the time of the Accident) that provides that "**issuance** of this part preempts any state law, rule, regulation, or order governing the sounding of the locomotive horn at public highway-rail crossing, in accordance with 49 U.S.C. 20106." *See* 49 C.F.R. § 222.7(a) (emphasis added). Thus, because KCSR complied with 49 C.F.R. § 221.21(a), Plaintiffs' state law claims based upon the sounding of KCSR's locomotive horn are preempted under the FRSA.

### B. Plaintiffs' warning claims must fail under Mississippi's occupied crossing doctrine.

11. Mississippi state law also requires that Plaintiffs' claims be dismissed. Plaintiffs admitted in their Complaint that KCSR's Train fully occupied the Crossing at the time of the Accident at issue herein. *See* Exhibit A. Plaintiffs assert that they were entitled to additional warning of the Train, over and above those warning signals installed with federal funding and the presence of the Train itself. However, under Mississippi law, Plaintiffs were not entitled to any additional warnings other than those that were present at the time of the Accident.

12. Mississippi law requires a railroad to provide warning of a train's approach to a crossing by erecting reflectorized crossbucks. *See* Miss. Code Ann. § 77-9-247. The purpose of

these warnings is, of course, to let motorists know of the existence of the railroad tracks so that motorists can "slow sufficiently to see whether or not a train [is] near the crossing." *Wilner v. Mississippi Export R. Co.*, 544 So. 2d 678, 682 (Miss. 1989). This duty is fully satisfied under Mississippi law when, as in this case, reflectorized crossbucks have been erected. *See id.* As shown by the photographic evidence presented herewith, *see* Exhibit C, KCSR fulfilled its state law duty to warn Plaintiffs that they should stop, look, and listen for a train's approach before entering the subject crossing.

13. Mississippi law also requires a railroad to provide warning of a train's approach to a crossing by blowing a whistle, sounding a horn or ringing a bell. *See* Miss. Code Ann. § 77-9-225. This statute requires that a train approaching a crossing blow its whistle, sound a horn or ring its bell continuously until the "crossing is passed." *Id.* The Mississippi Supreme Court has interpreted "until the crossing is passed" to mean the point in time when the crossing is "entirely occupied by the railroad train, whereupon the statutory obligation to continue signals no longer exists." *Spilman v. Gulf & S. I. R. Co.*, 163 So. 445, 445-46 (Miss.1935) (interpreting a prior version of section 77-9-225). In other words, once a train has fully occupied a crossing, as in this case, Mississippi law considers the crossing to be "passed" and no longer requires a railroad to provide warning of its train by blowing a whistle, sounding a horn or ringing a bell.

14. Further, under Mississippi law, when, as in this case, a train is fully occupying a crossing, the train itself is all the warning a motorist, such as Plaintiff Barbara Elam, is entitled. *See King v. Illinois Cent. R. Co.*, 337 F. 3d 550, 553 (5th Cir. (Miss.) 2003); *Clark v. Columbus & Greenville Ry. Co.*, 473 2O. 2d 947, 950 (Miss.1985); *Illinois Cent. R. Co. v. Williams*, 135 So. 2d 831 (Miss. 1961). Quoting the Mississippi Supreme Court, "a railroad company may leave its

8

train, or any part of it, standing over a public crossing, night or day, and whether light or dark, without any light or warning of any kind to the traveling public; that the presence of the car or cars themselves is all the warning the traveling public is entitled to unless the conditions were unusual. . . ." *Mississippi Exp. R. Co. v. Summers*, 11 So. 2d 429, 430 (Miss. 1943) (emphasis added) (quoted with approval by the Fifth Circuit in *King*, 337 F. 3d at 553).

15. The Mississippi Supreme Court in *Williams* went even further in disclaiming the need for railroads to warn motorists of an occupied crossing, holding that a railroad "is not required to maintain lights on its cars or to station a man with a lantern at the crossing to give warning that it is obstructed by cars. . . ." *Williams*, 135 So. 2d at 595 (citation omitted).[6] In other words, the Train was, itself, legally sufficient warning of the occupied Crossing, and any claim that additional warnings should have been provided fails as a matter of Mississippi law.

16. With its use of the term "unusual," quoted above, the *Summers* court alluded to a very limited exception to the occupied doctrine crossing, applicable only when the locality in which the crossing is situated constitutes a "dangerous environment." *Id*. This exception cannot be applied to the crossing in question, however. As set forth above, the Crossing involved herein was the subject of a federal study to determine whether warning signals over and above what state law required (crossbucks) were needed based on local conditions. *See* Exhibit B. Based upon the findings from this study, advance warning signs and pavement markings were installed and, by operation of federal law, were deemed adequate warning for motorists using the public

---

[6] This express reference to lights and lanterns goes to dark of night as a possible condition requiring special consideration and/or warnings. Such argument, as attempted by the plaintiff in the *King* case, fails under Mississippi law. *See, e.g.,. King*, 337 F. 3d at 553. As the Fifth Circuit clearly held in *King*, "darkness of night is not a[n unusual] condition" for purposes of the occupied crossing doctrine. *Id*. at 554 (citation omitted).

road. *See id.* Thus, to the extent that any local conditions should have been taken into consideration for purposes of providing motorists of special warnings, as Plaintiffs claim, such consideration was not only taken, but additional warnings were provided in response thereto.

17. Finally, "a picture is worth a thousand words," and the pictures of the road and the approach to the Crossing show that it is a straight and level road with no obstructions that would have blocked Plaintiffs' view of the Train over the Crossing.[7] *See* Exhibit C. Thus, as a matter of law, there were no "unusual circumstances" at this Crossing that required KCSR to provide any warning of the Train under Mississippi law, other than the Train itself, once the Train was occupying the Crossing. In short, all of Plaintiffs' state law claims based upon alleged inadequate warning fail as a matter of state law, in addition to failing as a matter of federal law.

## IV. CONCLUSION

18. For the reasons set forth above, Defendant The Kansas City Southern Railway Company respectfully requests that Plaintiffs' claims based upon alleged inadequate warning of the Train and/or Crossing be dismissed with prejudice.

Respectfully submitted,

THE KANSAS CITY SOUTHERN RAILWAY
COMPANY AND RONALD L. MICHAEL

BY: s/Charles E. Ross
CHARLES E. ROSS (MSB #5683)

OF COUNSEL:

---

[7] In this regard, this is NOT a case involving whether there was adequate sight distance to see an approaching train. The Crossing was fully occupied. This issue is, thus, whether a plaintiff should have seen the cars occupying the crossing. Clearly, Plaintiff Barbara Elam should have.

10

WISE CARTER CHILD & CARAWAY, P.A.
600 Heritage Building
401 East Capitol Street
Post Office Box 651
Jackson, Mississippi 39205-0651
Telephone: (601) 968-5500
Facsimile: (601) 968-5593

## CERTIFICATE OF SERVICE

I, Charles E. Ross, one of the attorneys of record for Defendants, The Kansas City Southern Railway Company and Ronald L. Michael, do hereby certify that on April __, 2011, a copy of the foregoing *Corporate Disclosure Statement* was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to DUNCAN L. LOTT and CASEY L. LOTT by operation of the Court's electronic filing system. There are no known non-CM/ECF participants at the time of this filing.

This the 15th day of April, 2011.

/s/ CHARLES E. ROSS
CHARLES E. ROSS

WISE CARTER CHILD & CARAWAY, P. A.
Professional Association
600 Heritage Building
Congress at Capitol
Post Office Box 651
Jackson, Mississippi 39205
Telephone: (601) 968-5500
Facsimile:     (601) 968-5593
E-mail:        cer@wisecarter.com;